*1363 OPINION.
MoRRis:
The petitioner contends that by virtue of an express agreement the decedent became liable to save the banks harmless from any loss growing out of these bond transactions and to take up said bonds and reimburse the banks for whatever consideration with which they had parted and, furthermore, irrespective of the decedent’s express agreement, that this liability existed against him during his lifetime because of the very nature of the bond transactions themselves, and therefore said liability became and constituted a claim allowable against his estate within the meaning of section 403 (a) (1) of the Revenue Act of 1921, and the amount paid by the estate in discharge thereof is allowable as a deduction. The respondent, -on the other hand, urges and contends that the bonds in question were not the property of the decedent, that he had no interest therein at the date of his death, that the payment by the estate was a voluntary investment of funds of the estate in said bonds, and, finally, that there was no valid and subsisting obligation on the part of the estate or the decedent to take over these bonds and that the action in so doing was purely voluntary.
The provisions of section 402 of the Revenue Act of 1921 here applicable are:
That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—
*1364 (a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate.
Section 403 (a) (1), invoked by the petitioner, provides:
That for the purpose of the tax the value of the net estate shall be determined—
(a) In the case of a resident, by deducting from the value of the gross estate—
(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States), losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, or from theft, when such losses áre not compensated for by insurance or otherwise, and such amounts reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or any estate, succession, legacy, or inheritance taxes.
Irrespective of the mathematical processes necessarily employed in the correct computation of the tax, that is, whether the total amount of the liability be allowed as a deduction and the fair market value of the bonds be included in the gross estate, or whether the allowable deduction be the net difference between said liability and fair market value, the result to be attained here must and will be governed by the legal consequences which resulted from the acquisition of the bonds at the outset and the several promises later made by the decedent with respect thereto. If we find from the evidence that the decedent did not have such an “ interest ” in these bonds at the time of his death, as is provided for in section 402 (a) of the Kevenue Act of 1921, or that the banks had no enforceable claim “ against the estate,” that is, such a claim as might have been upheld against the decedent prior to his death, we must sustain the respondent’s determination.
That the decedent at the time of his death did not have such an interest in the bonds that their value should be included in his gross estate, is apparent from the record. He received them from the contractors and concerns furnishing road building material and according to the testimony “ lodged ” them with the banks. The auditor entered them as assets of the banks and credits were recorded to said contractors and companies. The banks sold some of them to their own customers, and continued to carry the others as assets until they were resold to the estate, and even though it be admitted, due to the personal status of the decedent in the transactions, that the transfer of the bonds in question to the banks was voidable, no action was taken by the banks prior to his death to set aside such *1365 transfers. Under such circumstances we are of the opinion that the test of the statute as to what property shall be included in the gross estate has not been met.
Whether the banks had a claim against the estate which could have been enforced against the decedent during his life determines the validity of the deduction claimed by the petitioners. Hill v. Grissom, 299 Fed. 641; Isabella N. Skinker et al., 13 B. T. A. 846. The record shows that Shulthis received the bonds from time to time while he was an officer and director of the Citizens First National -Bank and the Kansas Savings & Trust Co., an affiliated company, and that the bonds were taken or negotiated by said banks under his instructions for the purpose of financing contractors and brick and cement companies in which he was financially interested. The record further shows that the officers of the bank became somewhat alarmed because of the fact that Shulthis had placed so much paper with the banks and as a result of examinations made by a special committee and open discussion in the presence of the board of directors and Shulthis, Shulthis finally stated that anything he put in the bank he was back of at all times and, at such times as the board wanted him, he would upon demand, take them up with his personal funds. Similar statements were made by Shulthis several times prior to this. About two weeks prior to Shulthis’ death there was a further examination by the bank examiners and a further discussion with respect to these items, as a result of which Shulthis stated that a lot of the items about which the bank was being criticized belonged to him personally, and that he was going to clean up all of his obligations with the institution and that the others would be written off or handled in a manner satisfactory to the bank examiners. Notwithstanding all of these various discussions, no demand was ever made upon Shulthis during his lifetime for the immediate removal of the bonds here in question, nor was there ever any agreement in writing stating that he would do so.
The petitioner’s counsel, in his brief, argues that because of the decedent’s pecuniary interest in both the banks and the borrowing corporations, and the fiduciary capacity in which he served the banks, he was from the very nature of the transactions themselves liable to save the banks harmless from any loss occasioned thereby. In support of this proposition he cites a number of cases bearing upon the question of corporate directors’, trustees’, or other officers’ relationship with the corporations which they serve and in which they are interested, which hold that “ their relation requires of them the highest and most scrupulous good faith,” and, furthermore, that “ the law does not permit them to manage the affairs of a corporation for their personal and private advantage, nor pecuniarily to be interested in contracts which other parties make with the corpora *1366 tion, through their influence and direction,” and, furthermore, “ that one shall not be agent for another party in a contract in which he is himself interested,” and other cases to the same general effect. It appears clearly that the other officers and directors had full knowledge of these transactions at all times, which is borne out by the fact that discussions arose with respect to them upon many occasions. If they regarded Shulthis’ actions as other than within the scope of his authority, it seems to us, before we can be called upon to adjudicate the question of whether or not a liability arose, that some action should have been taken by the officers, directors or stockholders in disapproval of his actions prior to his death. It is true that in the various discussions that took place the board of directors clearly indicated to Shulthis that they were greatly concerned, no donot due in part to the fact that the bank examiners were criticising the officers of the bank, but for our purposes that is not sufficient to establish liability against Shulthis for his alleged malfeasance in office so as to constitute a claim against the estate within the meaning of the statute.
It is true that the probate court “ authorized and directed ” the administrators “ to invest the funds of ” the estate in taking up what it termed the “ obligation ” of the decedent, but it must be borne in mind that the court was first petitioned by his heirs at law and that they executed a consent in writing, which the court made a part of its order, asking that such an order be made. This, in our opinion, is not an adjudication of the decedent’s liability to take up said obligation, and can not be relied upon to substantiate the contention of the petitioner.
Reviewed by the Board.

Judgment will he entered for the respondent.

Phillips, GeeeN, and ÁRUNDell dissent.